UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TOMAS PEREZ, | Case No. 3:19-cv-0067-RCJ-WGC |
| Plaintiff, | **ORDER** |
| v. | |
| BARRICK GOLDSTRIKE MINES, INC., *et al.*, | |
| Defendants. | |

The plaintiff, Tomas Perez, brought this suit alleging defendant Barrick Goldstrike Mines, Inc. (Barrick), violated his rights under the Family and Medical Leave Act, 29 U.S.C. §§ 2611-2654 (FMLA) and tortiously discharged him in violation of strong public policy. Barrick moves for summary judgment (ECF No. 29), which Perez has opposed (ECF No. 34). Having read and carefully considered the pleadings, the competent evidence in the record, the arguments of the parties, and the applicable legal authority, the Court will deny the motion.

**I.    Standard of Review**

In considering a motion for summary judgment, the court performs "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *United States v. Arango*, 670 F.3d 988, 992 (9th Cir. 2012). To succeed on a motion for summary judgment, the moving party must show (1) the lack of a genuine issue of any material fact, and (2) that the

court may grant judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Arango*, 670 F.3d at 992.

A material fact is one required to prove a basic element of a claim. *Anderson,* 477 U.S. at 248. The failure to show a fact essential to one element, however, "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Additionally, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012) (quoting *Anderson*, 477 U.S. at 252).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.*, at 323. As such, when the non-moving party bears the initial burden of proving, at trial, the claim or defense that the motion for summary judgment places in issue, the moving party can meet its initial burden on summary judgment "by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Id.,* at 325. Conversely, when the burden of proof at trial rests on the party moving for summary judgment, then in moving for summary judgment the party must establish each element of its case.

Once the moving party meets its initial burden on summary judgment, the non-moving party must submit facts showing a genuine issue of material fact. Fed. R. Civ. Pro. 56(e); *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000). As summary judgment allows a court "to isolate and dispose of factually unsupported claims or defenses," *Celotex*,

477 U.S. at 323-24, the court construes the evidence before it "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). The allegations or denials of a pleading, however, will not defeat a well-founded motion. Fed. R. Civ. Pro. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). That is, the opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed. R. Civ. Pro. 56(e)).

II.     **Background**

The Court considers the following facts as undisputed for purposes of Barrick's summary judgment motion. Tomas Perez worked as an underground miner for Barrick. On November 1, 2017, at about 5:00 a.m., he was driving a hauler truck through the mine. While rounding a corner, he swerved to avoid a rock. The truck, moving at about 6 or 7 miles an hour, struck one of the shotcrete-covered walls of the mine. Perez's left side ribs struck the armrest,[1] leaving him momentarily unable to breath and shaking.

Perez was aware of Barrick's policy requiring drivers to report incidents. A driver must report an incident that damages the walls or the truck; that is, damage that requires repair for safety or operational reasons. Within the context of the mine, the scraping of a truck against the mine walls is considered "normal wear and tear" resulting from driving large vehicles in tight quarters. Normal wear and tear does not need to be reported. A driver must also report an injury. Perez began to recover his breathing and to feel better. He inspected the walls and the truck but did not find any

---

[1]     The driver's seat in the truck faces at a 45-degree angle to the direction of travel, requiring drives to look to their left as they drove. As such, Perez's forward momentum would take the left side of his body into the armrest.

damage.  Perez did not notify his supervisor but instead finished his shift, driving one or two more loads.

Perez did not realize he was injured until the end of his shift.  While riding the elevator out of the mine, or perhaps when exposed to the cold and wind on the surface, he began feeling pain. Eloy Diaz, a mine worker on the Mine Rescue team, became aware that Perez was in pain.  Diaz instructed the bus driver, Jesse Gonzalez, to immediately return to the administrative building, where the showers and first aid room were located.  Gonzalez did not follow Diaz's instruction, despite Diaz's insistence that Perez was injured, because he did not believe Perez was injured.  Diaz took Perez to a different bus, which left immediately, and notified dispatch that Perez was coming in and was injured.

Diaz took Perez to the first aid room, where Perez was seen by Nikkayla Simon (Barrick's health and safety coordinator), who is trained as an EMT, and several other Barrick employees trained as EMTs.  Perez indicated his ribs hurt.  Simon assessed Perez's rib cage "and noted no redness or bruising."  She felt for abnormalities but found none.  Perez stood the entire time and stated it hurt to breath.  Simon noted Perez's lung sounds were clear and that his SPO2 was normal.

While Perez was being treated by the EMTs, Gonzalez went into the first aid room and watched the examination of Perez.  Gonzalez formed an opinion that Perez was faking his injury because he did not see any physical marks indicating an injury and he did not see Perez withdraw from the EMT's touches in a manner consistent with an injury.

Simon splinted Perez's ribs.  Perez declined an ambulance, but accepted transportation in a Barrick vehicle to a clinic in town where he was seen by Dr. Black.  Dr. Black diagnosed Perez with a left chest wall contusion, evaluated Perez as "totally unable to perform" his job duties, and set a follow-up appointment for November 6, 2017.  Perez did not allow Barrick's workers comp

representative to be in the room while he was being examined, but Dr. Black talked with her immediately following his examination of Perez.

While Perez was being transported to the clinic, Barrick began investigating the event. Two Barrick employees went into the mine to the location of the accident that Perez had identified. The employees could not find where Perez's truck had hit the wall, or find where the tires had deviated, or find a rock on the ground. The employees captured a video of the mine walls and took photographs of the truck the Court noted earlier. This visual evidence reveals that both the mine walls and Perez's truck have numerous scrapes. Simon, now acting in her capacity as Barrick's safety coordinator, ordered statements from all people involved, ordered a map of the incident location be created, and indicated they should try and figure out exactly where the incident occurred. Later that day, Gonzalez submitted his statement acknowledging that he had not believed Perez was injured and his reasons for that disbelief. He noted that "the first time [he] knew there actually was a problem" was when he went to the first aid rooms where 3 EMTs were taking care of Perez.

On November 4, Simon and Richard Scow (Perez's immediate supervisor) received an unsolicited e-mail from Gonzalez. Gonzalez wrote that, on November 2, he was told by another miner (on condition of anonymity) that Perez was faking his work injury so that he could fix his rental properties.

Perez had his follow-up appointment with Dr. Black on November 6. Dr. Black prescribed a muscle relaxant for Perez and again determined that Perez was "totally unable to perform" his job duties. This was again communicated immediately to Barrick's workers comp representative, in Dr. Black's office.

Around the same time, Simon and another Barrick employee talked with Gonzalez regarding his November 4, e-mail.

In response to Gonzalez's e-mail, Sandra Bell (employed by Barrick as human resources worker's compensation), initiated the hiring of a private investigator to surveille Perez. On November 7, the investigator spent a total of 6.2 hours in his investigation, and observed Perez driving a truck, walking with "a fluid and steady pace," and sitting at a gaming table in a casino for 45 minutes. On November 8, the investigator spent nearly nine hours in his investigation, though he only observed Perez arriving back at his residence in the afternoon. On November 9, the investigator spent 17 hours investigating Perez, starting early in the morning. During the day, he observed Perez driving, going to a casino, going to a liquor store, and going to a mobile home where he conducted construction work on the interior and exterior. The investigator captured video of Perez, including video showing Perez using a drill and carry items such as a ladder, sheet metal, and wood panels.

Sometime during the period of one to one-and-a-half weeks after the event, four Barrick employees (including Simon) met with Perez in Barrick's shared business center in Elko. The meeting lasted about an hour during which they discussed the November 1, incident with Perez. During the meeting, Perez stated that he had thrown the rock into the back of his truck.

On November 10, after receiving the investigator's initial report, Barrick made the decision to deny Perez's workers compensation claim.

On November 16, the investigator produced his final report of his surveillance.

Perez had a follow-up appointment with Dr. Black on November 16, 2017, and Dr. Black cleared Perez to return to work on November 19, 2017, with no limitations. Dr. Black continued to prescribe a muscle relaxant that Perez would take at bedtime.

On November 20, 2017, Scow, Chuck Pollard, and Joannie Jarvis created a memorandum recommending Perez's termination. They noted that the accident occurred when Perez hit a rock "while operating a forklift," causing the machine to jar, resulting in a Lost Time Incident. They noted "Perez did not immediately report the incident as per company policy" but continued to work

and completed his shift. They noted that "co-workers reported observing him participating in 'horse-play' both on the bus at quitting time and on the cage at the end of the shift." The noted that "a co-worker observed [Perez] exhibiting signs of distress and asked him if he was ok," at which time Perez reported his injury in the earlier incident. They noted that "Diaz informed the driver that [Perez] need to be checked out and they immediately went to have him looked at by [Health and Safety]." They noted Simmons looked at Diaz. They noted that Perez was taken to the doctor. They noted that Perez "refused to allow" the employee from the "Barrick Work Comp team" into the room "as is customary." They noted Dr. Black "diagnosed [Perez] with a soft tissue contusion, given medication and put off work for a period of time to heal."

They noted that Simon received a report from an employee stating that they knew Perez was "faking an injury so that he would have time to stay home to do repairs on his rentals."

They noted that, during Perez's follow-up visit with Dr. Black, he again did not allow the "Work Comp rep into the room." They noted "the investigation could not corroborate [Perez's] timeline or story." They noted there was no "mark on the rib [wall of the mine] that would indicate he had made contact." They noted Perez "stated that once he had come to a stop that he picked up the rock [the "size of a Kleenex box"] and tossed it into the truck. They noted, "the investigation team confirmed that he had no problem bending and picking up this rock to throw it into the truck." They noted that, as a result of the inconsistencies, the decision was made to conduct an investigation.

They summarized the investigator's report.

They noted Perez had received an Oral Reprimand in August of 2012 for "3 consecutive shifts called off . . . without sufficient leave to cover."

Regarding the final incident, they concluded "Perez did not properly report the incident to his supervisor. He completed at minimum 3 more loads and the rest of his shift, fueled and parked the equipment for the day." They noted that the "Standards of Conduct Accelerated Discipline Rules

7

#14 states, "Failure to report an on-the-job or job related environmental, safety, or health injury or incident." They noted Perez never spoke with his supervisor despite confirming he had the appropriate phone numbers and capabilities. They noted, as applicable policies, the "[f]alsification of Goldstrike records or documents," and the "[f]ailure to report an on-the-job or job related environmental, safety, or health injury or incident." They concluded that Perez's:

> behavior has not exemplified integrity in the workplace. He had every opportunity to properly report and do the right thing, however he did not. Barrick takes its safety program very seriously. When there are incidents, they have an impact on everyone within the division. The employee has not followed company policy or shown ethical behavior indicating he is not a suitable fit for Barrick Goldstrike.

Later that day, Barrick met with Perez to give him an opportunity to explain the inconsistencies. When Perez did not give an explanation, Barrick notified him that he was terminated. Barrick gave Perez a termination letter that stated he was terminated for "fail[ing] to notify your supervisor of an incident that supposedly occurred on 10-31-2017 as required by company policy. Further, as of this time we have not been able to validate your report of the incident."

### III. Legal Standard governing FMLA Interference Claims

The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter" (29 U.S.C. §2615(a)(1)), or "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter" (29 U.S.C. §2615(a)(2)).

Perez argues that he has brought claims under both clauses. The Court finds that he has not done so. Section §2615(a)(2) protects activity taken to oppose practices that are unlawful under the FMLA. Section 2615(a)(1) protects the exercise or attempt to exercise rights provided by the FMLA. Perez does not direct the Court's attention to allegations within his complaint, nor has he offered any argument within his opposition, suggesting that he opposed an unlawful practice by Barrick.

Instead, Perez relies upon a Third Circuit decision, *Egan v. Delaware River Port Authority*, 851 F.3d 263, 271 (3d Cir. 2017), to argue that he has brought a "retaliation" claim in addition to an "interference" claim. The argument is irrelevant to whether Perez has brought a retaliation claim pursuant to 2615(a)(2). The "prohibition against *interference* prohibits an employer from discriminating or *retaliating* against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. §825.220(c) (emphasis added). As indicated by the Ninth Circuit, §825.220(c) "actually pertains to the 'interference with the exercise of rights' section of the statute, §2615(a)(1), not the anti-retaliation or anti-discrimination sections, §§ 2615(a)(2) and (b)." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001). Noting its agreement with the Ninth Circuit, the Third Circuit, in *Egan*, "conclude[d] that §825.220(c) is a reasonable interpretation of §2615(a)(1)." 851 F.3d at 271. While the Third Circuit characterized the plaintiff's §2615(a)(1) claim as a retaliation claim, it recognized that it was a claim brought pursuant to §2616(a)(1) which prohibits interference with the exercise of FLMA rights.

*Egan* and *Bachelder* reveal that claims under §2615(a)(1) can be brought pursuant to two different theories of liability: (a) a direct interference with the exercise of a protected right (such as refusing to authorize leave or discouraging the use of leave), and (b) an indirect interference with FMLA rights (such as by considering the exercise of an FMLA right as a negative factor to support an adverse employment action). *See Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1135 (9th Cir. 2003) (recognizing §2615(a)(1) claims for (1) denying and discouraging use of FMLA leave, and mischaracterizing FMLA leave, as well as a claim (2) for considering the use of FMLA leave as a negative factor in a decision to terminate the plaintiff). Regardless of whether the latter theory is labeled as a retaliation theory, the Ninth Circuit treats such claims as interference because "[e]mployees are, understandably, less likely to exercise their FMLA leave rights if they can expect to be fired or otherwise disciplined for doing so." *Bachelder,* 259 F.3d at 1124.

To prevail on his §2615(a)(1) claim that Barrick interfered with his right to be reinstated, Perez must demonstrate: (1) he was eligible for FMLA protections; (2) his employer was covered by the FMLA; (3) he was entitled to FMLA benefits; (4) he provided sufficient notice of leave; and (5) Barrick denied Perez the FMLA benefits to which he was entitled. *See Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014); *Sanders v. City of Newport*, 657 F.3d 772, 778 (9thCir. 2011).

Barrick concedes, at least for purposes of the present motion, that only the last factor is at issue. As to whether Barrick denied Perez's FMLA right to be reinstated, Barrick correctly notes that it could legitimately terminate Perez for reasons unprotected by the FMLA. Such a termination would not violate Perez's FMLA right to be reinstated.

> Although the FMLA created a statutory right to reinstatement after taking FMLA leave, this right is not without limits. The FMLA is clear on this point: "Nothing in this section shall be construed to entitle any restored employee to ... any right, benefit, or position of employment other than any right, benefit or position to which the employee would have been entitled had the employee not taken the leave."

*Sanders v. City of Newport*, 657 F.3d 772, 778–79 (9th Cir. 2011) (quoting 29 U.S.C. § 2614(a)(3)(B)). "An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." 29 C.F.R. §825.216(a). However, the "employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment." *Id.* Accordingly, as Barrick is the party moving for summary judgment, and as Barrick will have the burden of proof at trial as the employer, Barrick must establish that no genuine issue of fact remains that it would have otherwise terminated Perez if he had not taken FMLA leave to succeed on its motion.

## IV. Analysis

Barrick asserts that it had two distinct and legitimate reasons for terminating Perez that were independent of his exercise of his FMLA rights. Barrick argues that it could terminate Perez because it "reasonably believed Perez had misrepresented his injury to Barrick." Barrick also argues that it terminated Perez for failing to immediately report the incident. Neither of these arguments warrants summary judgment in favor of Barrick.

### A. Misrepresentation of Injury

In asserting that it legitimately terminated Perez for lying about his injury, Barrick argues that it does not need to show that it was objectively correct in concluding Perez lied about his injury. Rather, Barrick argues that it must only show that it honestly believed Perez had lied about his injury. In short, Barrick asserts, it could legitimately fire Perez for lying about his injury, even if Perez was being truthful, "because Barrick *thought* he was lying."

The Ninth Circuit has recognized that, under the shifting burden of production framework of *McDonnell Douglas* of *Corp. v. Green,* 411 U.S. 792 (1973), an employer's non-discriminatory reason for taking an adverse employment action is valid if "honestly believed, "even if its reason is 'foolish or trivial or even baseless." *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1063 (9th Cir. 2002). While the *McDonnell Douglas* framework is inapplicable in FMLA cases, *see Xin Liu,* 347 F.3d at 1136 (9th Cir. 2003), the Court assumes that a similar "honest belief" standard would generally apply in determining whether an employer has met its burden of showing that it would have otherwise terminated an employee who has taken FMLA leave as if the employee had not taken leave.

However, Barrick's argument that it terminated Perez based its "honest belief" that Perez lied about his injury fails precisely because the argument concedes that Barrick terminated Perez for legitimately exercising his right to take FMLA leave. "The FMLA creates two interrelated,

11

substantive employee rights: first, the employee has a right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to his or her job or an equivalent job after using protected leave." *Bachelder,* 259 F.3d at 1122 (citing 29 U.S.C. §§ 2612(a), 2614(a)). Protected leave includes leave taken "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). However, "[a]n employee who fraudulently obtains FMLA leave from an employer is not protected by FMLA's job restoration or maintenance of health benefits provisions." 29 C.F.R. § 825.216(d). "Much as it should be obvious that the FMLA is not implicated and does not protect an employee against disciplinary action based upon absences if those absences are not taken for one of the reasons enumerated in the Act, the FMLA *is* implicated and does protect an employee against disciplinary action based on her absences if those absences are taken for one of the Act's enumerated reasons." *Bachelder*, 259 F.3d at 1125 (internal quotes and citations omitted).

The threshold inquiry in determining whether Barrick could terminate Perez for lying about his injury and taking protected leave is whether Perez lied about his injury. If Perez lied about his injury, then the FMLA is not implicated, and Perez was not protected by the FMLA. In such a circumstance, Barrick could permissibly terminate Perez for lying about his injury. Conversely, if Perez did not lie about his injury, the FMLA is implicated, and Perez was protected by the FMLA. In that circumstance, Barrick could not terminate Perez for taking leave, even if it honestly believed Perez was lying about his injury. Barrick's argument that at least five undisputed facts establish it had an honest belief that Perez lied is irrelevant to the threshold question whether Perez was injured. Barrick has conceded, at least for purposes of this motion, that Perez was injured. Accordingly, Barrick could not permissibly terminate Perez for lying about his injury regardless of whether it honestly formed an incorrect belief that Perez lied.

### B. Failure to Report the Incident

Barrick argues that it had an additional permissible reason to terminate Perez: he failed to immediately report the incident. However, assuming Barrick could terminate Perez for failing to report the incident, its own evidence (and arguments) showing that it terminated Perez for lying about his injury create a genuine issue of fact whether Barrick terminated Perez for failing to report the incident.

### C. Retaliatory discharge in violation of public policy.

Barrick is not entitled to summary judgment on Perez's common law claim for retaliatory discharge for the same reasons that it is not entitled to summary judgment on Perez's FMLA claim. To succeed on his tortious discharge claim, Perez must establish that he was discharged for engaging in conduct protected by strong public policy. Perez did engage in such protected conduct; he took FMLA leave because he had sustained an injury precluding him from performing his job. As such, an issue of fact exists whether Barrick terminated Perez for engaging in conduct protected by a strong public policy. Barrick is not entitled to summary judgment on Perez's state law claim for retaliatory discharge.

Therefore, for good cause shown,

THE COURT **ORDERS** that Defendant Barrick Goldstrike Mines, Inc.'s Motion for Summary Judgment (ECF No. 29) is DENIED.

DATED THIS 7th day of September, 2021

Robert C. Jones
United States District Judge